## UNITED STATES COURT OF INTERNATIONAL TRADE

### Before: The Honorable Claire R. Kelly

|  |  |
|---|---|
| **BOTH-WELL (TAIZHOU) STEEL FITTINGS CO., LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant,*<br><br>and<br><br>**BONNEY FORGE,**<br><br>*Defendant-Intervenor.* | **Court No. 21-166** |

### ORDER

Upon consideration of Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd.'s Rule 56.2 Motion for Judgment on the Agency Record and other papers and proceedings herein, it is hereby

**ORDERED** that Plaintiff's Motion is granted; and further

**ORDERED** that the U.S. Department of Commerce's determination in *Forged Steel Fittings From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 14722 (Mar. 18, 2021) ("Final Results") is arbitrary, capricious, an abuse of discretion, not supported by substantial evidence on the record, or is otherwise not in accordance with law; and further

**ORDERED** that this matter is remanded to Commerce for reconsideration of the Final

Results in accordance with the decision of this Court.

**SO ORDERED.**

Dated:_____, 2021
      New York, New York                       _____
                                            Claire R. Kelly, Judge

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**Before: The Honorable Claire R. Kelly**

<table>
<tr>
<td>

**BOTH-WELL (TAIZHOU) STEEL FITTINGS CO., LTD.,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant,*

and

**BONNEY FORGE,**

*Defendant-Intervenor.*

</td>
<td>

Court No. 21-166

</td>
</tr>
</table>

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd. moves for judgment on the agency record under Court of International Trade Rule 56.2.  For the reasons set forth in the accompanying memorandum of points and authorities in support of its motion, Plaintiff request that the Court determine that the U.S. Department of Commerce's final results in the countervailing duty administrative review of *Forged Steel Fittings From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 14722 (Mar. 18, 2021) is not supported by substantial evidence on the record and is otherwise not in accordance with law.

Dated: August 30, 2021

<div style="text-align: right">

Respectfully submitted,
/s/ Jeremy W. Dutra
Peter Koenig
peter.koenig@squirepb.com

</div>

Jeremy W. Dutra
jeremy.dutra@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 626-6780

*Counsel for Plaintiff*
*Both-Well (Taizhou) Steel Fittings, Co., Ltd.*

## UNITED STATES COURT OF INTERNATIONAL TRADE

### Before: The Honorable Claire R. Kelly

| |
|---|
| BOTH-WELL (TAIZHOU) STEEL FITTINGS CO., LTD.,<br><br>    *Plaintiff,*<br><br> v.<br><br>UNITED STATES,<br><br>    *Defendant,*<br><br> and<br><br>BONNEY FORGE,<br><br>    *Defendant-Intervenor.* |

Court No. 21-166

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Peter Koenig
peter.koenig@squirepb.com
Jeremy W. Dutra
jeremy.dutra@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 626-6780

*Counsel for Plaintiff*
*Both-Well (Taizhou) Steel Fittings, Co., Ltd.*

Dated: August 30, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

WORD COUNT CERTIFICATE OF COMPLIANCE.............................................................iv

I.      RULE 56.2 STATEMENT ........................................................................................... 1

        A.      Administrative Determination Subject to Appeal..................................... 1

        B.      Issue Presented.............................................................................................. 1

II.     STATEMENT OF FACTS ........................................................................................... 1

III.    STANDARD OF REVIEW ......................................................................................... 3

IV.     ARGUMENT ............................................................................................................... 4

        A.      Unrebutted record evidence demonstrates Both-Well did not use or benefit
                from the EBC program, and Commerce cannot use adverse inferences
                against Both-Well based on the Government of China's lack of
                cooperation to assume otherwise. .......................................................... 4

        B.      Commerce cannot apply adverse inferences against Both-Well based on
                speculation about how challenging verification of non-use of the EBC
                program might be. ...................................................................................... 9

V.      CONCLUSION........................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331 (CIT 2013) .........................7
*Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329 (CIT 2019)...............4
*China Kingdom Imp. & Exp. Co. v. United States*, 507 F. Supp. 2d 1337 (CIT 2007) ...............11
*Clearon Corp. v. United States*, 2021 Ct. Intl. Trade LEXIS 56 (CIT May 6, 2021)...................12
*Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (CIT 2020) ............................................8
*Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (CIT 2019) ............................................8
*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) .....................................................................3
*Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285 (CIT 2010)........................................5, 6
*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997) .............................................3
*Guizhou Tyre Co. v. United States*, 447 F. Supp. 3d 1373 (CIT 2020) ........................................8
*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (CIT 2019) .....................................8, 9
*Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (CIT 2019) ...............................8, 9, 11
*Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (CIT 2019) ........................................8
*Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (CIT 2019) ........................................8
*Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (CIT 2018) .....................................5, 8
*Jiangsu Zhongji Lamination Materials Co. v. United States*, 2020 Ct. Intl. Trade LEXIS 41
   (Mar. 24, 2020) ......................................................................................................................8
*Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (CIT 2019) ...8
*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)...........................................3
*Shandong Huarong Machinery Co. v. United States*, 435 F. Supp. 2d 1261 (CIT 2006) .............4
*Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 C.I.T. 804 (1999)..................................10
*Yama Ribbons & Bows Co. v. United States*, 2021 Ct. Intl. Trade LEXIS 49 (CIT Apr. 30,
   2021) .....................................................................................................................................8
*Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333 (Fed. Cir. 2011) ..............4, 5

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i).......................................................................................................3
19 U.S.C. § 1677e(b) ...................................................................................................................4
19 U.S.C. § 1677e(b)(1)...............................................................................................................4

**Administrative Decisions**

*Forged Steel Fittings from the People's Republic of China: Countervailing Duty Order*,
83 Fed. Reg. 60396 (Nov. 26, 2018).............................................................................................1

**Other Authorities**

*Issues and Decision Memorandum* for *Chlorinated Isocyanurates from the People's
Republic of China: Final Affirmative Countervailing Duty Determination; 2012*, 79 Fed.
Reg. 56,560 (Sept. 22, 2014) .....................................................................................................11

*Issues and Decision Memorandum* for the *Countervailing Duty New Shipper Review: Certain In-Shell Roasted Pistachios from the Islamic Republic of Iran*, 73 Fed. Reg. 9993 (Dept. of Commerce Feb. 25, 2008) ..............................................................................................7

*Issues and Decision Memorandum* for *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review;2013*, 81 Fed. Reg. 46,904 (July 19, 2016) .............8

## WORD COUNT CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 3,453 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Date: August 30, 2021

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra

*Counsel to Plaintiff Both-Well (Taizhou)
Steel Fittings Co., Ltd.*

Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd. ("Both-Well") submits this memorandum of points and authorities in support of its motion for judgment on the agency record.

## I.     RULE 56.2 STATEMENT

### A.     Administrative Determination Subject to Appeal

Both-Well seeks judicial review of the final results of the U.S. Department of Commerce's ("Commerce") administrative review of the countervailing duty order on forged steel fittings from the People's Republic of China.  Commerce published the contested determination in the *Federal Register* on March 18, 2021.[1]

### B.     Issue Presented

Whether Commerce's decision to use adverse facts available ("AFA") in assigning Both-Well a 10.54 percent CVD rate under the alleged Export Buyer's Credit Program is supported by substantial evidence and in accordance with law, given Both-Well's full cooperation and provision of evidence establishing non-use of the program during the period of review.

## II.     STATEMENT OF FACTS

On November 26, 2018, Commerce published the countervailing duty order on forged steel fittings from China.[2]  Commerce published a notice of opportunity to request an administrative review of the CVD Order on November 1, 2019.[3]  Based on a request from Both-

---

[1] *Forged Steel Fittings From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 14722 (Mar. 18, 2021) ("Final Results") (P.R. 107), and accompanying Final Issues & Decision Memorandum (Mar. 10, 2021) ("Final IDM") (P.R. 106).

[2] *Forged Steel Fittings from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 60396 (Nov. 26, 2018).

[3] P.R. 1—*i.e.*, document no. 1 of the public administrative record submitted by the United States to this Court.

Well and petitioners, Commerce initiated an administrative review of the CVD Order on January 17, 2020, for the period March 14, 2018 through December 31, 2018.[4]

On March 13, 2020, as part of the administrative review, petitioners submitted a new subsidy allegation ("NSA") to Commerce, alleging Both-Well may have received preferential lending through the Export Buyer's Credits ("EBC") program.[5]  Commerce initiated an investigation of the NSA on April 7, 2020, and issued questionnaires to Both-Well and the Government of China ("GOC") on April 8, 2020.[6]  The GOC timely responded to the NSA questionnaire on April 21, 2020,[7] and Both-Well timely responded on April 22, 2020.[8] Commerce issued a supplemental question to the GOC on July 16, 2020 concerning the NSA, to which the GOC responded on July 23, 2020.[9]

In its questionnaire response, Both-Well provided unrebutted evidence and explanations to Commerce demonstrating that it did not benefit from the EBC program.  In particular, Both-Well provided declarations from all of its U.S. customers certifying under penalty of perjury that they did not finance any purchases from Both-Well through the Import Export Bank of China's EBC program.[10]  Both-Well further certified that it did not assist any of its customers in obtaining buyer's credits and never had contact nor was associated with China's Ex-Im Bank during the period of review.[11]

---

[4] P.R. 5; *see also* P.R. 2; P.R. 3.

[5] P.R. 36.

[6] P.R. 42.

[7] P.R. 54; C.R. 14.

[8] P.R. 60; C.R. 16.

[9] P.R. 78.

[10] C.R. 16 at Ex. NSA-2.

[11] P.R. 60 at Resp. to Question Nos. 2, 3.

On November 13, 2020, Commerce issued its preliminary results finding the EBC Program countervailable and applying AFA to the program stating the GOC failed to provide the necessary information Commerce requested.[12]  Commerce continued to find the program countervailable in the final results, despite the record evidence—much less the statutorily required substantial evidence of record—to the contrary, and assigned the same AFA rate of 10.54 percent *ad valorem* for the program.  Both-Well's resulting countervailing rate was 25.90 percent *ad valorum*.  This litigation ensued.

## III.    STANDARD OF REVIEW

The Court must hold unlawful any aspect of Commerce's final results that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."[13] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  The substantial evidence standard requires more than mere assertion of "evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn."[15] Rather, substantial evidence supporting an agency determination must be based on the whole record, and the Court shall take into account not only the information that supports the agency's decision but also whatever in the "record fairly detracts from its weight."[16]  Commerce's determination concerning the EBC Program falls short of this Court's review standard.

---

[12] P.R. 89.

[13] 19 U.S.C. § 1516a(b)(1)(B)(i).

[14] *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

[15] *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997).

[16] *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

## IV.     ARGUMENT

Commerce applied adverse facts available ("AFA") to the GOC in analyzing the EBC

program because the GOC allegedly did not provide the requested information or documentation

necessary to develop a complete understanding of this program.[17]  Commerce then extended its

application of AFA to Both-Well in determining that the company benefitted from the EBC

program.[18]  This determination is not supported by substantial evidence and is contrary to law.

> **A.     Unrebutted record evidence demonstrates Both-Well did not use or benefit from the EBC program, and Commerce cannot use adverse inferences against Both-Well based on the Government of China's lack of cooperation to assume otherwise.**

Commerce cannot apply an adverse inference unless it is first appropriate to use facts

otherwise available.[19]  Commerce, moreover, can use an adverse inference when choosing from

those facts available only if an interested party also "fail[s] to cooperate by not acting to the best

of its ability to comply with a request for information."[20]  Otherwise, "[a]bsent a valid decision

to use facts otherwise available" and a finding that a respondent failed to "act[] to the best of its

ability," "Commerce may not use an adverse inference."[21]  Additionally, the adverse use of facts

otherwise available can only be used fill gaps necessary to complete the factual record and

ultimately to "find that the elements of the [CVD] statute have been satisfied."[22]

---

[17] P.R. 106 at 17-18, 25.

[18] P.R. 106 at 25.

[19] 19 U.S.C. § 1677e(b).

[20] 19 U.S.C. § 1677e(b)(1).

[21] *Shandong Huarong Machinery Co. v. United States*, 435 F. Supp. 2d 1261, 1274, 1289 (CIT 2006).

[22] *Changzhou Trina Solar Energy Co. v. United States*, 359 F. Supp. 3d 1329, 1338 (CIT 2019); *see also Zhejiang Dunilh Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) ("[I]t is clear that Commerce can only use facts otherwise available to fill a gap in the record").

In its Final Determination, Commerce claimed that it could use an adverse inference based on a claim that the GOC did not act to the best of its ability to answer Commerce's requests for the 2013 administrative rules of the EPC program, as well as other information concerning the operation of the EBC program.[23]  But Commerce conflates the operation of the EBC program with its use (or non-use as is the case here).  Courts have long recognized the distinction between the "administration" (operation) of an alleged subsidy program and the "existence and amount of the benefit conferred" (use) under the program.[24]  While "foreign governments are in the best position to provide information regarding the administration of their alleged programs, including eligible recipients . . . respondent companies will have information pertaining to the existence and amount of the benefit conferred on them by the program."[25] Because Commerce seeks different information from different parties, its AFA analysis "varies depending on which party has provided a deficient response."[26]  This distinction is consistent with Commerce's statutory mandate to apply AFA "only when it has first made a supported finding under § 1677e(a) that information is missing from the record."[27]

Here, there was no information gap in the record about whether the EBC program conferred a benefit on Both-Well.  The only missing information as perceived by Commerce was

---

[23] P.R. 106 at 18-19, 25.

[24] *Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1297 (CIT 2010).

[25] *Essar*, 721 F. Supp. 2d at 1297; *see also Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1271 (CIT 2018).

[26] *Essar*, 721 F. Supp. 2d at 1297.

[27] *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1271 (CIT 2018) (citing 19 U.S.C. § 1677e); *see also Zhejiang*, 652 F.3d at 1346 ("The use of facts otherwise available . . . is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record.").

whether and how the 2013 guidelines affected the operations of the EBC program.[28]  Whatever

fills that gap, however, can only establish, at most, that there was a financial contribution by the

GOC. Whether there was a financial contribution is irrelevant to a respondent's ability to provide

its own affirmative evidence of non-use.  As this Court explained:

> Where a foreign government fails to act to the best of its ability, the
> Department of Commerce will usually find that the government has
> provided a financial contribution to a specific industry.  Under that
> scenario, the Department then attempts to use information provided by the
> individual respondent companies regarding the benefit, if any, conferred
> by the particular program.[29]

Put differently, the gap in information created by the GOC's alleged failure as to

administration of the EBC program does not rewrite Both-Well's responses, including factual

statements and customer declarations confirming non-use.  These responses demonstrate that

none of Both-Well's customers benefitted from the EBC program, rendering the operational

details of the program immaterial.

In its NSA questionnaire response, a submission that Both-Well certified was accurate

under penalty of law, Both-Well reported that it did not use the EBC program during the POR.[30]

Both-Well also submitted declarations by all of the company's unaffiliated U.S. customers

during the POR—declarations also submitted under penalty of perjury.[31]  Throughout the

investigation, moreover, Both-Well fully cooperated with Commerce's requests related to the

EBC program and withheld no information.  Indeed, Commerce did not identify any

---

[28] P.R. 106 at Cmt. 1.

[29] *Essar*, 721 F. Supp. 2d at 1297 (internal citations omitted).

[30] P.R. 60.

[31] C.R. 16 at Exs. NSA-1, NSA-2.

insufficiency in the non-use statements and chose not to issue any supplemental questionnaires or probe into Both-Well's responses during verification.

Further corroborating Both-Well's non-use certification is the GOC's responses to Commerce's NSA questionnaire and supplemental questionnaire, which confirmed none of Both-Well's U.S. customers used the EBC program during the POR, outlined the steps used to determine non-use, and provided screenshots from the Export-Import Bank of China's Credit Management System demonstrating non-use.[32]

In short, the record definitively establishes that Both-Well did not use the EBC program and did not exhibit uncooperative behavior warranting AFA treatment under 19 U.S.C. § 1677e(a), (b).

Despite record evidence establishing non-use of the EBC program, Commerce nevertheless found that Both-Well benefitted from the EBC program based on nothing but the GOC's failure to provide information regarding the administration of the program.[33]  This is improper.  Regardless of whether GOC participated to the best of its ability, both this Court and Commerce have recognized that Commerce "should seek to avoid adversely impacting a cooperating party" like Both-Well where, as is the case here, "relevant information exists elsewhere on the record."[34]

---

[32] C.R. 14; P.R. 74.

[33] P.R. 106 at 25.

[34] *Archer Daniels Midland Co. v. United States*, 917 F. Supp. 2d 1331, 1342 (CIT 2013); *see also Issues and Decision Memo.* for the *Countervailing Duty New Shipper Review: Certain In-Shell Roasted Pistachios from the Islamic Republic of Iran*, 73 Fed. Reg. 9993 (Dept. of Commerce Feb. 25, 2008) at Cmt. 2 ("if information on the record indicates that the respondent did not use the program, Commerce will find the program was not used, regardless of whether the foreign government participated to the best of its ability").

For example, in *Solar POR 2*,[35] Commerce found that the GOC failed to provide requested information necessary to understand the EBC program, which prevented Commerce from being able "to fully verify the operation of this program."  Commerce, however, declined to punish the cooperative respondent for the GOC's actions.  Considering the entire record, which consisted of declarations from all of the respondent's U.S. customers during the POR "stating they did not obtain credit or otherwise participate in the Export Buyer's Credit program," Commerce found the declarations "support a determination that the program was not used by [respondent] or its customers during the period of review."[36]

This Court—in cases involving similar, if not identical facts—rejected Commerce's collateral application of AFA against a cooperating respondent as improperly conflating the *operation* of the EBC program with its *use*.[37]  Commerce's approach should likewise be rejected here.

---

[35] *Issues and Decision Memo.* for *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Countervailing Duty Administrative Review;2013*, 81 Fed. Reg. 46,904 (July 19, 2016) at Cmt. 1.

[36] *Id.*

[37] *Yama Ribbons & Bows Co. v. United States*, No. 19-47, 2021 Ct. Intl. Trade LEXIS 49 (CIT Apr. 30, 2021); *Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (CIT 2020); *Guizhou Tyre Co. v. United States*, 447 F. Supp. 3d 1373 (CIT 2020); *Jiangsu Zhongji Lamination Materials Co. v. United States*, No. 18-89, 2020 Ct. Intl. Trade LEXIS 41 (Mar. 24, 2020); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (CIT 2019); *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1335 (CIT 2019); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (CIT 2019); *Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (CIT 2019); *Guizhou Tyre Co. v. United States*, 389 F. Supp. 3d 1315 (CIT 2019); *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344 (CIT 2019); *Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261 (CIT 2018).

**B.     Commerce cannot apply adverse inferences against Both-Well based on speculation about how challenging verification of non-use of the EBC program might be.**

To justify its application of AFA against Both-Well, Commerce speculates about how verification of non-use *might* be onerous or impossible without additional information pertaining to the EBC program.  Such speculation is legally insufficient.  As this Court observed recently in a similar case involving the EBC program:

> {U}ntil the Department actually attempts verification and adequately confronts these (purportedly) insurmountable challenges, there is little for the Department to hang its hat on when it "continues to find a 'gap' in the record."[38]

The only evidence in the record "squarely detracts from Commerce's inference" that Both-Well used and benefited from the EBC program.  Under such circumstances:

> Commerce may not simply declare that the evidence cannot be verified and therefore, a gap exists. That is not how it works. Commerce must attempt verification in order to conclude that a gap exists related to that inquiry; and then only after Commerce finds that the "interested party has failed to cooperate by not acting to the best of its ability" can Commerce use an adverse inference to fill that gap.[39]

The bottom line is that without actually attempting to verify even one customers, Commerce has no idea whether verification would be difficult. Speculation that there might be certain scenarios where such a verification might be difficult ort that underlying documentation might exist making non-use unclear are insufficient bases to resort to AFA.  Indeed, it is entirely unreasonable (and lacks any basis in fact or reality) to assume or speculate that verification could not be satisfactorily completed, particularly since Commerce has verified many difficult and complex issues in the past. Without any facts establishing that non-use cannot be verified at the

---

[38] *Guizhou Tyre*, 415 F. Supp. 3d at 1405.

[39] *Guizhou Tyre*, 415 F. Supp. 3d at 1343.

U.S. customers, Commerce has not identified any "material" information that is missing, as required by 19 U.SC. § 1677e(a). Therefore, AFA cannot be applied.

Notwithstanding questions about whether there is a $2 million threshold or whether disbursement is through other banks, the basic operation of the EBC program is clear: it is a loan program run by China Ex-Im, applied for by, and given to, U.S. buyers of Chinese products. All of Both-Well's customers in this case—*i.e.*, the companies that would actually apply for this program—submitted record evidence that they did not use this program. These companies undeniably have knowledge of their own usage (or non-usage) of this program, however it operates, and all stated that they did not use it. Thus, whether there is a $2 million threshold has nothing to do with the claims of non-use; the buyer's declarations did not set a sales threshold; rather, they indicated that the company did not use the program *in any way*. Whether this loan program is disbursed through other banks also has nothing to with the claims of non-use; the declarations did not limit their non-use claims to certain banks but instead indicated that the program was not used in any way.

Commerce could have easily verified the non-use declarations by visiting Both-Well or Both-Well's customers and reviewing their loan accounts.[40]  Commerce's protestations—

---

[40] Commerce observes that the GOC confirmed that Both-Well "would know whether there was an interaction between the China Ex-Im Bank and the borrowers (i.e., the respondent's U.S. customers, who are not participating in this proceeding)," but then complains that "neither the GOC, nor the respondent company, provided enough information for Commerce to understand this interaction or how this information would be reflected in the respondent company's (or its U.S. customers') books and records."  (P.R. 106 at 22).  The alleged lack of information, however, is not the fault of either the GOC or Both-Well.  Commerce never asked for the information it now contends it wants and needs, and thus cannot fault Both-Well for not providing information Commerce itself never requested.  *See Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 23 C.I.T. 804, 820 (1999) (explaining that under the statute, "it is Commerce, not the respondent, which bears the burden of asking questions[ ]" and Commerce must ask "clear" questions "to let the respondent know what information it really wants.").  Commerce's failure to ask the relevant question renders its determination unlawful.  .

amounting to allowing the perfect be the enemy of the good—ring particularly hollow given what it has verified with U.S. customers with regard to the EBC program in the past.[41]  For example, in *Chloro Iso*, Commerce claimed that it was "unable to conduct a complete verification of non-use of this program at China ExIm."  That said, because the respondent's customers submitted declarations of non-use, Commerce conducted a verification and "confirmed through an examination of each selected customers' accounting and financial records that no loans were received under this program.[42]

In sum, notwithstanding Commerce's lack of a "complete" understanding, Commerce had a clear path to find non-use by either accepting the declarations submitted by Both-Well and its U.S. customers or by verifying these declarations.  Commerce's discretion to forego verification has consequences.  As this Court observed, Commerce is required to assume the accuracy and usability of submissions that it elected not to verify.[43]

Commerce did not identify any insufficiency in Both-Well's submissions—there were none—that would justify the agency resorting to facts available and rejection of the non-use evidence.  Commerce's determination to apply AFA to find Both-Well benefited from the EBC program therefore was unsupported by substantial evidence and contrary to law.

---

[41] *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d at 1343 (finding that "information related to the CVD inquiry is neither missing nor demonstrably deficient, especially in light of the fact that the Department was once able to verify declarations from U.S. customers indicating non-use of the EBCP").

[42] *Issues and Decision Memo.* for *Chlorinated Isocyanurates from the People's Republic of China: Final Affirmative Countervailing Duty Determination; 2012*, 79 Fed. Reg. 56,560 (Sept. 22, 2014) at 3.

[43] *See China Kingdom Imp. & Exp. Co. v. United States*, 507 F. Supp. 2d 1337, 1364 n. 13 (CIT 2007) (citing *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1354 (Fed. Cir. 2006) (noting that Commerce may not refuse to use certain unverified information if it was the agency that refused to verify the information in the first place)).

Indeed, Commerce appears to acknowledge the unlawfulness of its approach.  In a recent proceeding involving the EBC program, Commerce chose not to "verify" the respondent's "claims of non-use," but instead chose to follow the alternative outlined by this Court by finding "that based on the existing record evidence, neither [respondent] nor its customers used or received a benefit under the program."[44]  It should do the same here.

## V.      CONCLUSION

For the foregoing reasons, Both-Well respectfully requests that this Court order remand for Commerce to reconsider the Final Determination in this review.

Dated: August 30, 2021

<div style="margin-left:40%">

Respectfully submitted,
/s/ Jeremy W. Dutra
Peter Koenig
peter.koenig@squirepb.com
Jeremy W. Dutra
jeremy.dutra@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 626-6780

*Counsel for Plaintiff*
*Both-Well (Taizhou) Steel Fittings, Co., Ltd.*

</div>

---

[44] *Clearon Corp. v. United States*, No. 17-00171, 2021 Ct. Intl. Trade LEXIS 56, at *3 (CIT May 6, 2021).