UNITED STATES COURT OF INTERNATIONAL TRADE
Before the Honorable Claire R. Kelly, Judge

| | |
|---|---|
| BOTH-WELL (TAIZHOU) STEEL FITTINGS, CO., LTD., <br><br>*Plaintiff,* <br><br>v. <br><br>UNITED STATES, <br><br>*Defendant,* <br>and <br><br>BONNEY FORGE CORPORATION, <br><br>*Defendant-Intervenor.* | Court No. 21-00166 |

**ORDER**

Upon consideration of the motion for judgment on the administrative record filed by plaintiff, the responses thereto filed by the defendant and the defendant-intervenor, plaintiff's reply, the administrative record, and all other papers and proceedings herein, it is hereby:

**ORDERED** that the motions are **DENIED**; and it is further

**ORDERED** that the U.S. Department of Commerce's determination is sustained; and it is further

**ORDERED** that plaintiff's Complaint is **DISMISSED**.

It is **SO ORDERED**.

_____
Honorable Claire R. Kelly, Judge
U.S. Court of International Trade

Dated: _____, 2021
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
Before the Honorable Claire R. Kelly, Judge

| | |
|---|---|
| BOTH-WELL (TAIZHOU) STEEL FITTINGS, CO., LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br> and <br><br> BONNEY FORGE CORPORATION, <br><br> *Defendant-Intervenor.* | Court No. 21-00166 |

**DEFENDANT-INTERVENOR'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                                                    Roger B. Schagrin
                                                  Christopher T. Cloutier
                                                  Benjamin J. Bay
                                                 Michelle R. Avrutin
                                                 SCHAGRIN ASSOCIATES
                                                 900 7th St. NW Suite 500
                                                 Washington, DC 20001
                                                 (202) 223-1700

                                                 *Counsel for Bonney Forge Corporation*

Date:  November 2, 2021

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT PURSUANT TO RULE 56.2(c)(1) ............................................................. 1

I.      Administrative Determination Under Review ........................................................... 1

II.     Issues Presented For Review .................................................................................... 2

SUMMARY OF ARGUMENT................................................................................................ 2

STANDARD OF REVIEW...................................................................................................... 2

STATEMENT OF FACTS....................................................................................................... 5

ARGUMENT ............................................................................................................................ 6

I.      Commerce Is Not Compelled To Rely Upon Respondents' Statements That An Alleged Subsidy Program Was Not Used When A Government Fails To Provide Information On How The Program Is Administered Such That Commerce Cannot With Confidence Verify That The Program Was Not Used ...................................... 6

II.    Conclusion ................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Cases**

*Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974) .......................... 3

*Carlisle Tire & Rubber Co. v. United States*, 622 F. Supp. 1071 (Ct. Int'l Trade 1985) ............. 8

*Changzhou Trina Solar Energy Co., Ltd. v. United States*, 352 F. Supp. 3d 1316
    (Ct. Int'l Trade 2018) .......................................................................................................... 7

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ..................... 4

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007) ........................................................... 4

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) .............................................................. 2

*Essar Steel Ltd. v. United States*, 721 F.Supp.2d 1285 (Ct. Int'l Trade 2010) .............................. 7

*Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ...................... 4

*Guizhou Tyre Co. v. United States*, 523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) ......................... 7

*Heveafil Sdn. Bhd. v. United States*, 58 F. App'x 843 (Fed. Cir. 2003) ........................................ 8

*Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, 405 F. Supp. 3d 1317
    (Ct. Int'l Trade 2019) .......................................................................................................... 7

*Kerr-McGee Chem. Corp. v. United States*, No. 98-1260, 1999 WL 89033
    (Fed. Cir. Feb. 19, 1999) .................................................................................................. 7-8

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) .............................. 3

*Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056 (Fed. Cir. 2001) ......................... 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29 (1983) ............................................. 3

*North Star Steel Ohio, a Div. of N. Star Steel Co. v. United States*, 824 F.Supp. 1074
    (CIT 1993) ...................................................................................................................... 4, 7

*Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372 (Fed. Cir. 2001) ..................... 4

*Suramerica de Aleaciones Laminadas, C.A. v. United States,* 44 F.3d 978 (Fed. Cir. 1994) ....... 2

*Timken Co. v. United States*, 699 F. Supp. 300 (Ct. Int'l Trade 1988) ......................................... 4

*United States Steel Group v. United States*, 96 F.3d 1352 (Fed. Cir. 1996) ................................. 3

**Administrative Determinations**

*Forged Steel Fittings From the People's Republic of China: Final Results of Countervailing
    Duty Administrative Review; 2018*, 86 Fed. Reg. 14722
    (Dep't of Commerce Mar. 18, 2021) ……………..……………………………………1

**Statutes**

19 U.S.C. § 1677e(a) .................................................................................................................. 8

19 U.S.C. § 1677e(b) .................................................................................................................. 8

**Other Authorities**

Uruguay Round Agreements Act Statement of Administrative Action, H.R. REP. NO. 103-316,
    Vol. 1 at 964 (1994) ............................................................................................................. 9

UNITED STATES COURT OF INTERNATIONAL TRADE
Before the Honorable Claire R. Kelly, Judge

|  |  |
|---|---|
| BOTH-WELL (TAIZHOU) STEEL FITTINGS, CO., LTD., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br> and <br><br> BONNEY FORGE CORPORATION, <br><br> *Defendant-Intervenor.* | Court No. 21-00166 |

**DEFENDANT-INTERVENOR'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to USCIT Rule 56.2 and the Court's June 29, 2021 scheduling order, Defendant-Bonney Forge Corporation ("Bonney Forge" or "Petitioner") submits the following response in opposition to the motion for judgment on the agency record filed by Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd. ("Both-Well" or "Plaintiff") in the above-captioned action.

**STATEMENT PURSUANT TO RULE 56.2(c)(1)**

**I.  Administrative Determination Under Review**

The administrative determination under review is the final determination of the Department of Commerce ("Commerce") in *Forged Steel Fittings From the People's Republic of China: Final Results of Countervailing Duty Administrative Review*; *2018*, 86 Fed. Reg. 14,722 (Mar. 18, 2021) ("Final Results") (P.R. 107), including Final Decision Memorandum (Mar. 10, 2021) ("Final DM") (P.R. 106).

1

**II.     Issues Presented For Review**

1. Whether Commerce is compelled to rely on respondents' statements that a subsidy program was not used when the responding government fails to provide information on how the program is administered such that Commerce cannot with confidence verify that the program was not used solely through company books and records.

## SUMMARY OF ARGUMENT

Commerce's final determination is supported by substantial evidence and in accordance with law and therefore should be sustained. Commerce determined that the government of China ("GOC") did not cooperate to the best of its ability by failing to provide information requested, and as a result, Commerce was unable to verify claims of the mandatory respondents' non-use of the Export Buyer's Credit Program ("EBC"). Accordingly, Commerce applied facts available with an adverse inference. Without information about the potential involvement of third-party banks and a full understanding of the administrative measures governing the program, Commerce cannot identify the correct issues, or verify use of the program. Commerce thus reasonably determined that information was missing from the record because of the GOC's failure to cooperate to the best of its ability. Consequently, Commerce appropriately relied on adverse facts available.

## STANDARD OF REVIEW

The standard of review requires that the Court uphold an agency determination as lawful unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law" 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s}

substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984).

A plaintiff must do more than simply point to contradictory evidence in the record to overturn the agency's decision. "{T}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (citations omitted). To the extent, therefore, that a plaintiff claims the evidence before Commerce "could be open to multiple interpretations, its argument does not require, or even allow, reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1062 (Fed. Cir. 2001) (citing *Matsushita*, 750 F.2d at 933). In addition, a plaintiff may not ask the Court to re-weigh the evidence and decide the case for Commerce. *See Matsushita*, 750 F.2d at 933. The role of the Court is not to question the agency's decisions about the weight or quality of the evidence. *See United States Steel Group v. United States*, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence); *see also Matsushita*, 750 F.2d at 933 (it is not the weight of the evidence, but whether it reasonably supports a rational decision, that is evaluated by a reviewing court). The Court may not substitute its judgment or its interpretation of the evidence for that of the agency. *See Matsushita*, 750 F.2d at 936.

The standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut.*, 463 U.S. 29, 43 (1983). While Commerce must explain the basis for its decisions, the court "will . . . 'uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned.'" *Id.* (quoting *Bowman Transp. Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

3

In reviewing Commerce's interpretation of a statutory provision, this Court is guided by the principles set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, a court reviewing an agency's interpretation of a statute must begin with the statutory test: "{i}f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43 (citations omitted). If this Court finds that the statute is silent or ambiguous with respect to the specific question at issue, the question for the Court is whether Commerce's interpretation is based on a permissible interpretation of the statute. *Chevron*, 467 U.S. at 842. The agency's reasonable interpretations of its statutory responsibilities are entitled to judicial deference. *Id.* at 844; *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001).

The Court may not overturn an agency determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007), and the Court will not substitute its judgment for that of Commerce in choosing between two fairly conflicting views, even though it could justifiably have made a different choice had the matter been before it *de novo*. *See Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006); *Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (Court will not "weigh the adequate quality or quantity of the evidence for sufficiency").

Finally, given Commerce's special expertise, this court has traditionally granted "substantial deference to the agency in the methods it employs in administering the antidumping and countervailing duty law." *North Star Steel Ohio, a Div. of N. Star Steel Co. v. United States*, 824 F. Supp. 1074, 1077 (CIT 1993).

## STATEMENT OF FACTS

On November 26, 2018, Commerce published the countervailing duty order on forged steel fittings from China. *Forged Steel Fittings from the People's Republic of China: Countervailing Duty Order*, 83 Fed. Reg. 60,396 (Nov. 26, 2018). Commerce subsequently published a notice of opportunity to request an administrative review of the order on November 1, 2019 (P.R. 1), and initiated a review on January 17, 2020, for the period March 14, 2018 through December 31, 2018. (P.R. 5; *see also* P.R. 2; P.R. 3.).

On March 13, 2020, petitioners submitted a new subsidy allegation ("NSA") to Commerce, alleging Both-Well may have received preferential lending through the Export Buyer's Credits ("EBC") program. (P.R. 36). Included in the allegation were excerpts from the 2018 Annual Report of the Export-Import Bank of China showing more than one billion RMB in outstanding EBC loans. (P.R. 36 at 3 and Exhibit 5). Commerce initiated an investigation of the NSA on April 7, 2020, and issued questionnaires to Both-Well and the Government of China ("GOC") on April 8, 2020. (P.R. 42).

The GOC responded to the NSA questionnaire on April 21, 2020 (P.R. 54; C.R. 14), stating that, based on the information available "at this stage," no U.S. customers used "the alleged program during the POI {sic}" and that a response to Commerce's standard questions appendix was therefore "not necessary." *Id*. at 1. For its part, Both-Well responded to Commerce's questions regarding the alleged program on April 22, 2020 with a series of declarations that the company's customers had not used the alleged program. (P.R. 60; C.R. 16).

Commerce issued a supplemental question to the GOC on July 16, 2020 concerning the NSA, to which the GOC responded on July 23, 2020. (P.R. 78). In its response, the GOC stated again that according to "the information available" no customer of Both-well utilized the allege

program and that, on this basis, it would not answer Commerce's "unnecessary" questions, and that the "Administrative Measure" governing the program was "internal to the bank, non-public, and not available for release." *Id.*

On November 13, 2020, Commerce issued its preliminary results applying AFA to the program, explaining that the GOC failed to provide necessary information. (P.R. 89). Commerce continued these findings in the final results. (P.R. 106 at 7).

## ARGUMENT

I. **Commerce Is Not Compelled To Rely Upon Respondents' Statements That An Alleged Subsidy Program Was Not Used When A Government Fails To Provide Information On How The Program Is Administered Such That Commerce Cannot With Confidence Verify That The Program Was Not Used**

During the POR, China's Export-Import Bank extended more than one billion RMB in preferential loans through the ECB program. (P.R. 36 at 3 and Exhibit 5). The GOC, however, declined to respond to most questions about the program. (P.R. 78). Plaintiff argues that the GOC's failure to explain how the program works is "immaterial" because both the GOC and company reported that it did not benefit from the program. Both-Well Br. at 6.

As Commerce explained, however, the information proffered by Both-Well "could not be confirmed at the respondent exporters in a manner consistent with its long-standing verification methods." (P.R. 106 at 12). In particular, the "missing information was especially significant because the available record evidence indicates that, under the EBC Program, credits are not direct transactions from the China Ex-Im Bank to the U.S. customers of the respondent exporters; rather, there can be intermediary banks involved ... Commerce would simply not know what to look for behind each loan in attempting to identify a loan provided by the China Ex-Im Bank via a correspondent bank." *Id*. at 19-21.

This Court has previously held that, "to apply an adverse inference that a cooperating party benefited from the EBC {program} based on the GOC's failure to cooperate, Commerce must: (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establish how the withheld information creates this gap by explaining why the information the {government} refused to give was necessary to verify claims of non-use; and (3) show that only the withheld information can fill the gap by explaining why other information, on the record or accessible by respondents, is insufficient or impossible to verify." *Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019) (citing *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 352 F. Supp. 3d 1316, 1326-27 (Ct. Int'l Trade 2018)). More recently, this Court has held that Commerce has identified the gap in the record for the EBC program, but failed to explain how the missing information was necessary for verifying respondents' claims of non-use. *Guizhou Tyre Co. v. United States*, 523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021).

Commerce has good reason to demand cooperation from foreign governments in countervailing duty proceedings – more often than not those governments "are in the best position to provide information regarding the administration of their alleged subsidy programs." *Essar Steel Ltd. v. United States*, 721 F.Supp.2d 1285, 1297 (Ct. Int'l Trade 2010), rev'd on other grounds by 678 F.3d 1268 (Fed. Cir. 2012). This court has traditionally granted "substantial deference" to the investigative methods Commerce has developed over many decades. *North Star Steel Ohio, a Div. of N. Star Steel Co. v. United States*, 824 F. Supp. 1074, 1077 (CIT 1993). The Federal Circuit has also observed that "It is 'within the discretion of Commerce to determine how to verify' and 'due deference will be given to the expertise of the agency.'" *Kerr-McGee Chem. Corp. v. United States*, No. 98-1260, 1999 WL 89033, at *4 (Fed.

Cir. Feb. 19, 1999) (quoting *Carlisle Tire & Rubber Co. v. United States*, 622 F. Supp. 1071, 1082 (Ct. Int'l Trade 1985)); *see also Heveafil Sdn. Bhd. v. United States*, 58 F. App'x 843, 847 (Fed. Cir. 2003) (discussing "the deference given to Commerce to develop its own verification procedures").

The Court's decisions on the EBC program have turned Commerce's standard verification procedures on their head. Now, if both the responding government and responding companies claim a program is not used, the responding government may decline to explain how the program works, including aspects as fundamental as eligibility and which banks provide loans. The absence of such key information on the record will lead to verifications involving examination of the financial records of each U.S. purchaser without Commerce officials knowing whether loans from certain banks or under a certain threshold could be ignored, or documents might be expected to accompany an EBC loan. Commerce would also be unable to confirm that a company reported its total EBC loans by checking company records against those of the GOC.

In the underlying proceeding, the GOC's decisions not to provide certain information deprived investigators of information that would ensure verification was both accurate and also feasible. Commerce consequently determined that necessary information was not on the record, the GOC withheld this information, and the GOC impeded the investigation under 19 U.S.C. § 1677e(a). Commerce further found that the GOC failed to cooperate to the best of its ability under 19 U.S.C. § 1677e(b), and on this basis applied an adverse inference to find that Both-Well used the EBC program. These determinations regarding the manner in which Commerce conducts its investigations generally and verifications in particular should be due deference. *See Kerr-McGee Chem. Corp. v. United States*, No. 98-1260, 1999 WL 89033, at *4 (Fed. Cir. Feb. 19, 1999). Commerce, not the GOC, should determine the manner in which investigations are

8

conducted, and what information is necessary for Commerce to discharge its statutory responsibilities.

In the absence of the ability to compel the GOC to provide information, the use of facts available with an adverse inference is an essential tool for Commerce to satisfy its statutory obligations. *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act ("SAA"), H.R. REP. NO. 103–316, at 868 (1994). Commerce appropriately utilized this too in the review below, and the Court should uphold its determination to do so.

## II. Conclusion

For the foregoing reasons, Bonney Forge respectfully requests that the Court uphold Commerce's determination as supported by substantial evidence and in accordance with law.

Respectfully submitted,

/s/Christopher T. Cloutier
Roger B. Schagrin
Christopher T. Cloutier
Benjamin J. Bay
Michelle R. Avrutin
SCHAGRIN ASSOCIATES
900 7th St. NW, Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for Bonney Forge Corporation*

Date:  November 2, 2021

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief contains 3,299 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: November 2, 2021                               /s/ Christopher T. Cloutier
                                                                    Christopher T. Cloutier