# UNITED STATES COURT OF INTERNATIONAL TRADE

Before: The Honorable Claire R. Kelly

| | |
|---|---|
| BOTH-WELL (TAIZHOU) STEEL FITTINGS CO., LTD.,<br><br>    *Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>    *Defendant,*<br><br>and<br><br>BONNEY FORGE,<br><br>    *Defendant-Intervenor.* | Court No. 21-166 |

**REPLY BRIEF IN IN SUPPORT OF
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Peter Koenig
peter.koenig@squirepb.com
Jeremy W. Dutra
jeremy.dutra@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 626-6780

*Counsel for Plaintiff
Both-Well (Taizhou) Steel Fittings, Co., Ltd.*

Dated: November 30, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................................ii
WORD COUNT CERTIFICATE OF COMPLIANCE ................................................................................iii
I.      ARGUMENT ........................................................................................................................1
II.     CONCLUSION .....................................................................................................................7

# TABLE OF AUTHORITIES

**Cases**

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306 (CIT 2015)..................................................................................................................3
*Canadian Solar Inc. v. United States*, No. 19-00178, 2021 Ct. Intl. Trade LEXIS 115 (CIT Sep. 3, 2021).................................................................................................2, 4, 5, 7
*Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (CIT 2020) ...............................................1
*Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285 (CIT 2010)..............................................2
*Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014) ........................6
*Hyundai Steel Co. v. United States*, 279 F. Supp. 3d 1349 (CIT 2017).........................................3
*KYD, Inc. v. United States*, 607 F.3d 760 (Fed. Cir. 2010) ...........................................................5
*NTN Bearing Corp. of Am. v. United States*, 26 CIT 53 (2002) ....................................................3

**Statutes**

19 U.S.C. § 1677e(a)........................................................................................................................1
19 U.S.C. § 1677e(b)(1)...............................................................................................................1, 5

**Administrative Decisions**

*Issues & Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China* (Oct. 12, 2021) ...............................7

## WORD COUNT CERTIFICATE OF COMPLIANCE

This brief has been prepared utilizing Microsoft Word with 12-point Times New Roman font. In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief, as set forth in 2B(1) of the Chambers Procedures, undersigned certifies that this brief contains 2,161 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

Date: November 30, 2021

Respectfully submitted,

*/s/ Jeremy W. Dutra*
Jeremy W. Dutra

*Counsel to Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd.*

Plaintiff Both-Well (Taizhou) Steel Fittings Co., Ltd. ("Both-Well") submits this reply to the response brief of Defendant United States.[1]

## I. ARGUMENT

Both-Well contests Commerce's determination to apply adverse facts available ("AFA") to the use of the Export Buyer's Credit Program ("EBCP") when (1) there is substantial evidence on the record establishing that Both-Well's U.S. customers did not use this program; and (2) there is no evidence on the record that non-use cannot be verified through Both-Well's U.S. customers.

Defendant's response repeats arguments that have been rejected by this Court in multiple cases under identical circumstances.[2] Indeed, Defendant recognizes this fact.[3] Defendant's insistence on continuing to defend Commerce's determination is mystifying considering its failure to appeal this issue to the Court of Appeals for the Federal Circuit ("CAFC"), a fact that this Court noted recently.[4]

As Both-Well explained in its initial brief, before applying AFA, Commerce must demonstrate that information is missing on the record because of a party's noncooperation.[5] Here, there is no information missing from the record regarding EBCP usage. Both-Well certified that it did not assist any of its customers in obtaining buyer's credits and never had

---

[1] Def. Resp. in Opp'n to Pls. Mot. for J. on the Agency R. (Nov. 2, 2021), ECF No. 30 ("Def. Br.").
[2] Mem. in Supp. of Pl.'s Mot. for J. on the Agency R. (Aug. 30, 2021), ECF No. __ ("Both-Well Br.") at 8 n.37.
[3] Def. Br. at 13-14.
[4] *See Clearon Corp. v. United States*, 474 F. Supp. 3d 1339, 1353 (Ct. Int'l Trade 2020) ("{i}t is worth noting that . . . the United States elected not to file an appeal in any of the aforementioned cases.")
[5] Both-Well Br. at 5; *see also* 19 U.S.C. §§ 1677e(a), (b)(1).

1

contact nor was associated with China's Ex-Im Bank during the period of review.[6]  Both-Well further provided declarations from all of its U.S. customers certifying under penalty of perjury that they did not finance any purchases from Both-Well through the Import Export Bank of China's EBC program.[7]  The existence of such certifications of non-use, means there is "no gap in the record . . . regarding EBCP usage" that would permit Commerce to resort to AFA.[8]  Commerce's use of AFA to determine Both-Well used the EBCP therefore is unsupported by substantial evidence and is unlawful.

Defendant fixates on the Government of China's ("GOC") alleged failure to provide information regarding the supposed revised administrative measures for the EBCP from 2013 and a list of third-party partner banks involved in the disbursement of the funds.[9]  Defendant claims that, without such information, it would be "unreasonably onerous" for Commerce "to comb through the business activities of the company respondents' customers without any guidance as to how to simplify the process or any guidance as to which loans or banks should be subject to scrutiny as part of a verification for each company."[10]  Defendant continues to disregard the distinction between the operation of the EBCP and the usage of the program.  As explained in Both-Well's initial brief, the Court has long recognized the distinction between the "administration" (operation) of a program and the "existence and amount of the benefit conferred" (usage) under the program.[11]  Furthermore, as Commerce acknowledges, this Court

---

[6] P.R. 60 at Resp. to Question Nos. 2, 3.
[7] C.R. 16 at Ex. NSA-2.
[8] *Canadian Solar Inc. v. United States*, No. 19-00178, 2021 Ct. Intl. Trade LEXIS 115, at *41 (CIT Sep. 3, 2021).
[9] Def. Br. at 15-16.
[10] *Id.* at 20.
[11] Both-Well Br. at 5-6; *see also Essar Steel Ltd. v. United States*, 34 CIT 1057, 1070, 721 F. Supp. 2d 1285, 1297 (2010), *aff'd in part and rev'd in part on other grounds*, 678 F.3d 1268 (Fed. Cir. 2012).

held, repeatedly, that the China Ex-Im Bank's 2013 revision and a list of the third-party banks involved in disbursing the EBC funds do not create a "gap" on the record that warrants the application of AFA.[12] In short, if Commerce can rule out the possibility that Both-Well used the program, the operation of the program is irrelevant. Commerce, therefore, did not need information on the operation of the EBCP to verify Both-Well's non-use of the program.

Contrary to what Defendant claims, Both-Well's non-use of the EBCP is verifiable absent the information concerning the operation of the ECBP.[13] Commerce does not need to know the exact partner banks participating in the EBCP but only needs to confirm Both-Well's non-linkage to the EBCP. Commerce can verify that any loans received by Both-Well are not tied to the EBCP by examining sample loans from Both-Well's customers.[14] This verification process is by no means "unreasonably onerous."[15] Defendant cites to *Borusan Mannesmann* for the proposition that verification "is not a fact-finding mission."[16] This discussion is quoted from an argument by Commerce, which the Court found to be ultimately mooted.[17] Indeed, in *Hyundai Steel*, the Court rejected an identical argument, reasoning that Commerce is authorized to request "the submission of factual information" at verification.[18] The Court should find the reasoning in *Hyundai Steel* persuasive. If Commerce required additional information, it could have solicited such information from Both-Well or its customers at verification.

---

[12] Def. Br. at 13-14.
[13] Both-Well Br. at 9-11.
[14] *See NTN Bearing Corp. of Am. v. United States*, 26 CIT 53, 135 (2002) ("A verification is a spot check and is not intended to be an exhaustive examination of the respondent's business").
[15] Def. Br. at 20.
[16] Def. Br. at 19.
[17] *Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1349-50 (CIT 2015).
[18] *Hyundai Steel Co. v. United States*, 279 F. Supp. 3d 1349, 1364 (CIT 2017).

3

Commerce's claim that it would not be possible to verify "the company respondents' customers' non-use of this program without understanding the identity of these correspondent banks" (*i.e.*, information requested from GOC) is without merit. This Court recently rejected this very argument based on a record virtually identical to the one in the present review:

> Commerce's arguments that EBCP non-usage is unverifiable without the names of the partner banks lack sufficient support. Commerce posits that to verify use of a loan program, it would typically examine the company's subledgers for references to the party making the financial contribution and request underlying documentation from specific entries to confirm the origin of each loan. Because it does not know the names of the partner banks that may disburse loans under the EBCP, Commerce claims it would have to review underlying documentation for all loans reflected in the subledger to determine whether any loan was associated with the EBCP. This review would be "an unreasonably onerous undertaking for any company that received more than a small number of loans." Commerce, because it never proceeded to attempt verification, does not indicate the number of loans in question and does not demonstrate how burdensome verification would be here, however. The court acknowledges that verification would appear to be easier if Commerce had access to the names of the partner banks and could review specific entries in a customer's subledger, and that Commerce is entitled to consider the burden of verification on agency resources. But here, Commerce has provided insufficient evidence to conclude that verification by the usual spot check of the customer records would be unduly burdensome. This record also suggests that Commerce would have likely had adequate opportunity to attempt verification as Mandatory Respondents offered to aid Commerce's verification efforts and indicated that they would encourage unaffiliated customers to do the same. Commerce made no such attempt and its claims of unverifiability are unavailing.[19]

Commerce never attempted to verify Both-Well's and its customers' certifications of non-use. Its concerns about verification potentially being onerous or impossible under certain circumstances is mere speculation. Such speculation, as this Court recognized in *Canadian*

---

[19] *Canadian Solar*, 2021 Ct. Intl. Trade LEXIS 115 at *41-43.

*Solar*, does not constitute substantial evidence and thus represents an insufficient bases to resort to AFA.[20]

Commerce's use of AFA against Both-Well, moreover, was unlawful because adverse inference must be limited to the non-cooperating party.[21]  While recognizing this principle, Defendant cites two cases—*KYD, Inc. v. United States* and *Fine Furniture (Shanghai) Ltd. v. United States*—to argue that Commerce may apply AFA to a cooperating respondent if the foreign government fails to provide requested information.[22]  Both cases are distinguishable and do not support Commerce's use of AFA here.

In *KYD*, the court indeed affirmed Commerce's use of AFA against the cooperative, independent importer (KYD) based on the exporter (King Pac)'s failure to cooperate.[23]  KYD, however, was closely affiliated with King Pac as KYD was an importer of bags made by King Pac.[24]  The adverse inference imposed due to King Pac's non-cooperation, although having a collateral impact on KYD, was proper as it had the potential to encourage cooperation from King Pac because of the parties' close connection, *i.e.*, the importer-exporter relationship.[25]  In contrast, the non-cooperative party (GOC) and the cooperative party (Both-Well) here do not share the same kind of affiliation relationship; there is no such business relationship between the GOC and Both-Well.  Because the relationship between Both-Well and the GOC is too attenuated, applying AFA against Both-Well would not achieve the same purpose of eliciting cooperation from the allegedly non-cooperative GOC.

---

[20] *Id.* at *45.
[21] 19 U.S.C. § 1677e(b)(l)(A); *see also Canadian Solar*, 2021 Ct. Intl. Trade LEXIS 115 at *45.
[22] Def. Br. at 19.
[23] *KYD*, 607 F.3d 760, 768 (Fed. Cir. 2010).
[24] *Id.* at 761.
[25] *Id.* at 768.

In *Fine Furniture*, the court upheld Commerce's use of AFA against the respondent because of the GOC's failure to provide requested information.[26]  Defendant, however, fails to appreciate the facts that distinguish Both-Well from the respondent in *Fine Furniture*.  Here, Both-Well's customer declarations were readily available as "facts not collaterally adverse to a cooperative party," a scenario that was specifically contemplated as a limit to the reach of the AFA statute in *Fine Furniture*.[27]   By substituting AFA for the non-use declarations Both-Well submitted, Commerce failed to use properly submitted record evidence to measure the level of benefit received from the EBCP.  In so doing, it acted contrary to the statute, as interpreted by the Court and upheld by the Federal Circuit in *Fine Furniture*.  Defendant, thus, cannot draw support from the above two cases to argue that substantial evidence supported Commerce's application of AFA against the cooperative party (Both-Well) or that such application was lawful.

Here, Both-Well cooperated by attesting that it is not involved with the EBCP and providing customer certifications stating that their customers were not involved in the EBCP. There is no record evidence—and Defendant cites to none—suggesting that Both-Well or its customers used this program, and Defendant offers no reason, supported by the record (let alone substantial evidence) to doubt the legitimacy of Both-Well's statements of non-use or customers' certifications.  Under such circumstances, "Commerce's claims that it is unable to verify these certifications without information from the GOC are not supported by substantial evidence. Commerce has not attempted verification and thus far has no basis to claim

---

[26] *Fine Furniture*, 748 F.3d 1365, 1373 (Fed. Cir. 2014).
[27] *Id.* at 1372 ("Commerce did not apply adverse inferences to substitute for any information that was actually submitted by the cooperating respondents, such as the actual rate Fine Furniture reported paying for electricity. Commerce used this rate to determine the amount of benefit that Fine Furniture received under the Electricity Program.").

unverifiability. Its assertion that verification would be overly burdensome did not suffice to justify its use of AFA."[28]

Both-Well notes that although Defendant continues to defend Commerce's decision here, Commerce itself, "in recognition of court precedent," recently found non-use of the EBCP based on, *inter alia* certified non-use by respondents and their customers:

> {R}egarding benefit, we recognize that the CIT directed Commerce in numerous decisions to consider whether any available information provided by respondents may be sufficient to fill the gap of missing record information in considering claims of non-use for the EBC program. As a result, we issued supplemental questionnaires and questionnaires in lieu of onsite verification to each mandatory respondent and their U.S. customers, requesting additional information regarding its financing activities. We received complete responses from the respondents, and, consequently, as facts available, we find that neither Dingli nor LGMG – or their U.S. customers used the program.[29]

Given Commerce's determination of non-use in *Certain Mobile Access Equipment*, the Court cannot credit Commerce's claimed inability to verify non-use of the EBCP by Both-Well.

## II.   CONCLUSION

For the reasons set forth above, Commerce's use of AFA to find use of the EBCP was unsupported by substantial evidence and unlawful as there was no information missing on the record that would justify Commerce's use of AFA. The Court should order remand for Commerce to reconsider the Final Determination in this review.

Dated: November 30, 2021

                                              Respectfully submitted,
                                              /s/ Jeremy W. Dutra
                                              Peter Koenig
                                              peter.koenig@squirepb.com

---

[28] *Canadian Solar*, 2021 Ct. Intl. Trade LEXIS 115 at *45.

[29] *Issues & Decision Memorandum for the Final Affirmative Determination of the Countervailing Duty Investigation of Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China* (Oct. 12, 2021) at 55-56 (Comment 5).

Jeremy W. Dutra
jeremy.dutra@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Tel: (202) 457-6000
Fax: (202) 626-6780

*Counsel for Plaintiff*
*Both-Well (Taizhou) Steel Fittings, Co., Ltd.*