C-570-068<br>
Remand<br>
Slip Op. 22-10<br>
POR: 3/14/2018 – 12/31/2018<br>
**Public Document**<br>
E&C/OVIII: Team

*Both-Well (Taizhou) Steel Fittings, Co., Ltd. v. United States*
Consol. Court No. 21-00166 (CIT February 8, 2022)
Forged Steel Fitting from the People's Republic of China

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.    SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT) in *Both-Well (Taizhou) Steel Fittings, Co., Ltd. v. United States*, Consol. Court No. 21-00166, Slip Op. 22-10 (CIT February 8, 2022) (*Remand Order*). These final remand results concern the *AR1 Final Results* of the countervailing duty (CVD) order on forged steel fittings from the People's Republic of China (China).[1] In its *Remand Order*, the CIT directed Commerce either: (1) to attempt to verify the Export Buyer's Credit Program (EBC program) non-use certifications provided by Both-Well (Taizhou) Steel Fittings, Co., Ltd.'s (Both-Well) U.S. customers before continuing to apply adverse facts available for the EBC program; or (2) if after attempting verification and determining that verification is not possible without the missing information from the Government of China (GOC), to explain, in detail, the specific ways in which Commerce attempted verification of the non-use certifications.[2]

---

[1] *See Forged Steel Fittings from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2018*, 86 FR 14722 (March 18, 2021) (*AR1 Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Remand Order* at 20 and 21.

As set forth in detail below, pursuant to the CIT's *Remand Order*, we have further explained, and reconsidered, in part, our determination regarding Commerce's application of adverse facts available (AFA) and an adverse subsidy rate for the EBC program. Consequently, for the purposes of these final results of redetermination on remand, Commerce has made certain changes to Both-Well's subsidy rate for the EBC program.

## II. BACKGROUND

In the *AR1 Final Results*, Commerce applied AFA to the EBC program, as the GOC failed to provide the requested information needed to allow Commerce to analyze this program fully.[3] Accordingly, we found that the GOC did not cooperate to the best of its ability in response to Commerce's specific information requests. In turn, as AFA, we found that the EBC program constituted a financial contribution and met the specificity requirements of the Tariff Act of 1930, as amended (the Act), and that Both-Well used the program, despite its claims of non-use.[4] Further, we assigned an AFA rate for this program of 10.54 percent *ad valorem*, the highest rate determined for a similar program in the *Coated Paper from China Amended Final*[5] proceeding, applicable to respondent companies.[6]

In the instant review, the GOC stated that the Export-Import Bank of China (EX-IM Bank) limits the provision of export buyer's credits to business contracts exceeding two million U.S. dollars (USD).[7] However, information on the record indicated that the GOC revised this program in 2013 to eliminate this minimum requirement.[8] Commerce requested that the GOC

---

[3] *See AR1 Final Results* IDM at 8-27.
[4] *Id.*
[5] *See Certain Coated Paper Suitable for High-Quality Print Graphics Using Sheet-Fed Presses from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 FR 70201 (November 17, 2010) (*Coated Paper from China Amended Final*) (revised rate for "Preferential Lending to the Coated Paper Industry" program).
[6] *See AR1 Final Results* IDM at 26-27.
[7] *Id.* at 16-18.
[8] *Id.*

provide the revised 2013 Administrative Measures for this program.[9]  However, the GOC refused to provide this document, stating that the "2013 internal guidelines/revised Administrative Measures are internal to the bank, non-public, and not available for release."[10]

Further, information on the record also indicated that the EX-IM Bank could disburse credits directly or through third-party partner and/or correspondent banks.[11]  However, the GOC refused to confirm whether third party banks play a role in the disbursement/settlement of export buyer's credits.[12]  Additionally, the GOC refused to provide a list of all third-party banks involved in the disbursement/settlement of export buyer's credits.[13]

Given the complicated structure of loan disbursements for this program, we found that a complete understanding of how this program is administered was necessary to conduct our standard subsidy analysis.  However, the GOC refused to provide the relevant information as to how this program operated.  As a result, the GOC had not provided the necessary information that would permit us to determine whether this program constituted a financial contribution or whether this program was specific.  Accordingly, we found that the GOC did not cooperate to the best of its ability in response to our specific information requests and determined, as AFA, that this program constituted a financial contribution and met the specificity requirements of the Act.[14]

The GOC claimed that neither company used this program.  However, we found that absent the information requested, Commerce was not able to verify non-use of the program.  Further, we determined that the GOC was the only party that could answer questions about the

---

[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

internal administration of this program.  Additionally, we found that without a full understanding about the role of third-party banks, the statements provided by the mandatory respondent company and its U.S. customers certifying non-use of the program were also not verifiable. Therefore, we found that the GOC had not cooperated to the best of its ability and, as AFA, found that Both-Well used and benefited from this program.  As such, we assigned an AFA rate of 10.54 percent *ad valorem* to Both-Well.[15]

Based on the CIT's *Remand Order* that Commerce attempt to verify the veracity of the claims by Both-Well's U.S. customers that they did not use the EBC program, Commerce issued a questionnaire to Both-Well on March 1, 2022, regarding its U.S. customers' certificates of non-use.[16]  On March 15 and 16, 2022, Both-Well provided timely responses from its U.S. customers.[17]  Subsequently, on March 30, 2022, Commerce issued a supplemental questionnaire requesting additional information from Both-Well's U.S. customers.[18]  On April 6, 2022, the deadline to submit its supplemental questionnaire response, Both-Well requested an extension of time to submit its response,[19] to which Commerce responded by granting a partial extension.[20]  On the same day, Both-Well provided a response to Commerce's supplemental questionnaire for three of six of its U.S. customers.[21]  In response to the CIT's decision to extend the due date for Commerce's remand redetermination, on April 21, 2022, Commerce granted Both-Well's April

---

[15] *Id.* at 26-27.
[16] *See* Commerce's Letter, "Remand of the 2018 Administrative Review of the Countervailing Duty Order on Forged Steel Fittings from the People's Republic of China:  Export Buyer's Credit Supplemental Questionnaire," dated March 1, 2022 (First Supplemental).
[17] *See* Both-Well's Letter, "Forged Steel Fitting from China:  Extension Request to Submit Response to Export Buyer's Credit Supplemental Questionnaire," dated March 15, 2022; *see also* Both-Well Letter, "Forged Steel Fittings From China Response to Export Buyer's Credit Supplemental Questionnaire," dated March 16, 2022.
[18] *See* Commerce's Letter, "Remand of the 2018 Administrative Review of the Countervailing Duty Order on Forged Steel Fittings from the People's Republic of China:  Export Buyer's Credit Second Supplemental Questionnaire," dated March 30, 2022 (Second Supplemental).
[19] *See* Both-Well's Letter, "Forged Steel Fittings from China:  Extension Request," dated April 6, 2022.
[20] *See* Commerce's Letter, "Second Supplemental, Extension Request," dated April 6, 2022.
[21] *See* Both-Well's Letter, "Forged Steel Fittings from China:  Response To Second Supplemental Questionnaire," dated April 6, 2022.

6, 2022, deadline extension request in full.[22] Subsequently, on May 7, 2022, Both-Well submitted its supplemental questionnaire response for two of the remaining three U.S. customers.[23] On May 10, 2022, Both-Well requested an additional extension of time to submit its response for the remaining U.S. customer,[24] to which Commerce responded by granting the extension.[25] On May 16, 2022, Both-Well submitted its supplemental questionnaire response for the remaining U.S. customer.[26]

### III.   ANALYSIS

In light of the CIT's *Remand Order*, Commerce has reconsidered the use of AFA for the EBC program. In the *AR1 Final Results*, Commerce determined that the use of AFA was warranted in determining the countervailability of the EBC program because the GOC did not provide the requested information needed to allow Commerce to fully analyze this program, and we continue to make this determination for this remand. However, as described below, upon further review, we find that information provided by Both-Well and its customers fills the gap created by the GOC's non-cooperation, and we find that neither Both-Well nor its U.S. customers used this program during the period of review (POR).

*Financial Contribution and Specificity*

As explained in the *AR1 Final Results*, the GOC failed to respond to the Standard Questions Appendix and failed to provide requested information regarding the operation of this

---

[22] *See* Commerce's Letter, "Second Supplemental Response Date Further Extended," dated April 21, 2022.
[23] *See* Both-Well's Letter, "Forged Steel Fittings from China: Supplemental Response To Second Supplemental Questionnaire," dated May 7, 2022.
[24] *See* Both-Well's Letter, "Forged Steel Fittings from China: Extension Request," dated May 10, 2022.
[25] *See* Commerce's Letter, "Second Supplemental, Extension," dated May 11, 2022.
[26] *See* Both-Well's Letter, "Forged Steel Fittings from China: Supplemental Response To Second Supplemental Questionnaire," dated May 16, 2022.

program.[27]  Accordingly, relying on AFA, we find that the program provides a financial contribution within the meaning of section 771(5)(D) of the Act.

Regarding specificity, although the record with respect to this program suffers from significant deficiencies, we note that the GOC's description of the program and supporting materials (albeit, found to be deficient) demonstrate that through this program, state-owned banks, such as the EX-IM Bank, provide loans at preferential rates for the purchase of exported goods from China.[28]  Furthermore, Commerce has found this program to be an export subsidy in past CVD proceedings involving China.[29]  Thus, taking all such information into consideration indicates that the provision of export buyer's credits is contingent upon exports within the meaning of sections 771(5A)(A) and (B) of the Act.

*Benefit*

Regarding benefit, Commerce continues to find that the GOC is the only party that can answer questions about the internal administration of this program, and that non-use certificates cannot replace the cooperation of the GOC.  The GOC's refusal to provide the 2013 Revisions to the Administrative Measures, which provide internal guidelines for how this program is administered by the EX-IM Bank, and a list of partner/correspondent banks that are used to disperse funds through this program, constitutes withholding necessary information and impeded our ability to analyze the program's operation or determine how the program could be properly verified.  Thus, the GOC's failure to provide the requested information further undermines our ability to verify the respondent's and its U.S. customers' claims of non-use.

---

[27] *See AR1 Final Results* IDM at 8-26.
[28] *See* GOC's Letter, "GOC New Subsidy Allegation Questionnaire Response:  First Administrative Review of Forged Steel Fittings from the People's Republic of China," dated April 21, 2020, at 1-6.
[29] *See, e.g., Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2016*, 84 FR 17382 (April 25, 2019), and accompanying IDM, at Comment 16.

Nonetheless, we recognize that the CIT has directed Commerce in many other decisions to consider whether any available information provided by respondents may be sufficient to fill the gap of missing record information in considering claims of non-use for the EBC program.[30] In its *Remand Order* in this case, the CIT held that we cannot continue to apply AFA without first attempting to verify the non-use certifications of Both-Well's customers.[31]  As a result, to verify the respondent's non-use information for the EBC program, we issued questionnaires and supplemental questionnaires to Both-Well and its U.S. customers requesting additional information regarding their financing activities.[32]  This process is consistent with Commerce's approach in other administrative proceedings where the respondent has provided non-use certificates from all of its customers.[33]  We note that Commerce had not adopted such an approach at the time of this administrative review.

After granting several extensions of the deadline to submit responses to these questionnaires, we received complete responses from all of Both-Well's customers.  We sought and received from each of Both-Well's six customers, where applicable, a reconciliation of their financing during the POR, including complete audited financial statements, general ledgers, trial balances, charts of accounts, loan documentation including details of the loan specifics and purpose, as well as screen shots from the customers' accounting systems.  A thorough review of this material shows no evidence that the customers applied for or used, directly or indirectly, the

---

[30] *See, e.g., Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346 (CIT 2019); *Clearon Corp. v. United States*, 359 F. Supp. 3d 1344, 1358-60 (CIT 2019); *Jiangsu Zhongji Lamination Materials Co. v. United States*, 405 F. Supp. 3d 1317 (CIT 2019); and *Changzhou Trina Solar Energy Co. v. United States*, 255 F. Supp. 3d 1312, 1313 (CIT 2017).
[31] *See Remand Order* at 20-21.
[32] *See* First Supplemental; and Second Supplemental.
[33] *See Forged Steel Fittings from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2019*, 87 FR 35498 (June 10, 2022) (*Forged Steel Fittings from China 2019*), and accompanying IDM, at Comment 2; *Certain Mobile Access Equipment and Subassemblies Thereof from the People's Republic of China:  Final Affirmative Countervailing Duty Determination*, 86 FR 57809 (October 19, 2021) (*Mobile Access Equipment from China*), and accompanying IDM, at Comment 5.

EBC program during the POR. We find this new information sufficiently affirms the respondent's non-use certifications within the context of this *Remand Order*.

As noted above, the CIT instructed us to attempt to verify the non-use certifications before continuing to apply AFA.[34] The CIT did not define how to attempt verification or order us to complete verification if the first steps toward verification support a finding of non-use. We are no longer applying AFA; rather, we are now finding non-use based on the U.S. customers' supplemental questionnaire responses. The information we have on the remand record is sufficient and consistent with that in other recent cases to determine non-use.[35] Commerce's decisions of how to "verify" in this remand do not preclude us from verifying ECB non-use certifications beyond the issuance of supplemental questionnaires in other cases. Therefore, for this remand redetermination we find non-use of the EBC program during the POR of the first administrative review of the CVD order on forged steel fittings from China.

## IV.   INTERESTED PARTY COMMENTS

Commerce released the Draft Results to parties for comments on June 17, 2022.[36] No parties submitted comments on the Draft Results.

## V.   RESULTS OF FINAL REDETERMINATION

Consistent with the *Remand Order*, we reconsidered our decision to apply AFA to the EBC program. Based on the foregoing explanations, we made changes to our determination and found non-use for the respondent Both-Well during the POR. Accordingly, we revised the subsidy rate calculations for the mandatory respondent Both-Well from the *AR1 Final Results*. The revised CVD rate for Both-Well for the POR, March 14, 2018, through December 31, 2018,

---

[34] *See Remand Order* at 20-21.
[35] *See Forged Steel Fittings from China 2019* IDM at Comment 2; and *Mobile Access Equipment from China* IDM at Comment 5.
[36] *See Draft Results of Redetermination Pursuant to Court Demand*, dated June 17, 2022 (Draft Results).

is listed in the chart below. Should the CIT affirm these final results of redetermination, Commerce intends to publish a notice of amended final results and issue the appropriate liquidation instructions to U.S. Customs and Border Protection.

| Exporter | Subsidy Rate from *AR1 Final Results* (percent *ad valorem*) | Subsidy Rate for the Remand Redetermination (percent *ad valorem*) |
|---|---|---|
| Both-Well (Taizhou) Steel Fittings, Co., Ltd. | 25.90 | 15.36 |

7/7/2022

X ~Lisa W. Wang~

Signed by: LISA WANG